**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| MICHAEL THORSON and CYNTHIA JOHNSON, Individually and on Behalf of All Others Similarly Situated, ) ) ) ) | Case No.: 19-cv-1463 **CLASS ACTION COMPLAINT** |
| Plaintiffs, ) ) | |
| v. ) | **Jury Trial Demanded** |
| ) ) | |
| STATE COLLECTION SERVICE INC., ) ) ) | |
| Defendant. ) | |

**INTRODUCTION**

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

**JURISDICTION AND VENUE**

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

**PARTIES**

3.      Plaintiff Michael Thorson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Cynthia Johnson is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

6.     Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt Defendant sought to collect from Plaintiff was incurred as a result of a consumer transaction.

7.     Defendant State Collection Service, Inc. ("SCS") is a corporation with its principal place of business located at 2509 S. Stoughton Rd., Madison, WI 53716.

8.     SCS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

9.     SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.    SCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. SCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat § 427.103(3).

## FACTS

### *Facts Related to Plaintiff Thorson*

11.    On or around October 13, 2018, SCS mailed a debt collection letter to Plaintiff Thorson regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

12.    Upon information and belief, the alleged debt listed in Exhibit A was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

2

13.     Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff Thorson inserted by the computer.

14.     Upon information and belief, Exhibit A is a form debt collection letter, used by SCS to attempt to collect alleged debts.

15.     Upon information and belief, Exhibit A is the first written communication SCS mailed to Plaintiff Thorson regarding this alleged debt.

16.     Exhibit A includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

**\*\*IMPORTANT CONSUMER NOTICE\*\***
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

17.     Exhibit A also lists the following details about Plaintiff Thorson' alleged debt:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| AURORA ST LUKES SOUTH SHORE | 1094 | 01/06/17 | $323.29 |
| AURORA ST LUKES SOUTH SHORE | 1094 | 01/18/17 | $590.00 |
| AURORA ST LUKES SOUTH SHORE | 1094 | 02/02/17 | $75.00 |
| AURORA ST LUKES MEDICAL CENTER | 1094 | 02/13/17 | $75.00 |
| AURORA ST LUKES SOUTH SHORE | 1094 | 04/02/18 | $885.00 |
| AURORA ST LUKES SOUTH SHORE | 1094 | 04/10/18 | $80.00 |
| AURORA ST LUKES SOUTH SHORE | 1094 | 04/16/18 | $80.00 |
| AURORA ST LUKES SOUTH SHORE | 1094 | 04/25/18 | $885.00 |
| | | Total Amount Due: | $2,993.29 |

18.     Above the validation notice, Exhibit A additionally states:

The past due accounts below have been referred to this office for debt collection. You may pay the total amount due by cash, check, credit card, debit card or money order. If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until after the 30 day validation period described below.

19.     The unsophisticated consumer would understand the statement that "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" to mean that SCS could report the alleged debt to one or more Consumer Reporting Agencies ("CRAs")

3

approximately 30 days after the consumer received <u>Exhibit A</u>.  *See, Slogaski v. Amcol Systems, Inc.*, No. 18-c-1604, Dkt. No. 19 (Order Denying Motion to Dismiss) (E.D. Wis. July 12, 2019).

20.     The unsophisticated consumer would understand the statement that SCS would report their alleged debt to CRAs after the expiration of the 30-day validation period to be a threat that the alleged debt would be included on his credit report if he did not pay or dispute it during the validation period.

21.     Billing for medical services, which involves several levels of billing based on numerous accounts, providers, and insurers, is extraordinarily complicated and confusing to consumers.  *E.g.,* Wisconsin Department of Financial Institutions, "Consumer Protection Fact Sheet – Medical Billing," https://datcp.wi.gov/Pages/Publications/MedicalBilling147.aspx) (accessed on July 31, 2018) ("Be prepared to receive separate bills for physician services such as anesthesiologist, radiologist or surgeon.  This means you may receive several billings from just one visit to the hospital or clinic.  The bill may even come from a billing department with a different name than your hospital or clinic.").

22.     As a result of billing disputes and delays in insurance coverage, medical debt collection items may appear on consumers' credit reports, and negatively impact consumers' creditworthiness.

23.     In light of the impact of improper medical debt collection items on consumers' creditworthiness, the office of the Attorney General of the State of New York opened an investigation into the appearance of medical debts on consumers' credit reports.

24.     On March 8, 2015, Experian Information Solutions, Inc., Equifax Information Services, LLC, and TransUnion LLC – the three major national Credit Reporting Agencies (collectively "CRAs") entered into a Settlement Agreement with the Attorney General of the

4

State of New York Bureau of Consumer Frauds & Protection pursuant to an Investigation by the Attorney General of the State of New York. A copy of this Settlement Agreement is attached to this Complaint as Exhibit B.

25.     Section III.A.3.a of the Settlement Agreement, Exhibit B, provides:

> To allow appropriate time for insurance remediation and clarity on what a consumer's individual payment obligation is for a medical account, the CRAs shall prevent the reporting and display of medical debt identified and furnished by Collection Furnishers when the date of the first delinquency is less than one hundred and eighty (180) days prior to the date that the account is reported to the CRAs.

26.     The 180-day waiting period went into effect on September 15, 2017. *See e.g.,* Michelle Andrews "Credit Agencies to Ease Up on Medical Debt Reporting," National Public Radio, https://www.npr.org/sections/health-shots/2017/07/11/536501809/credit-agencies-to-ease-up-on-medical-debt-reporting (published July 11, 2017) ("Starting September 15, the three major credit reporting agencies --- Experian, Equifax and TransUnion --- will set a 180-day waiting period before including medical debt on a consumer's credit report.  The six-month period is intended to ensure there's enough time to resolve disputes with insurers and delays in payment.")  (accessed November 9, 2018).

27.     Upon information and belief, as of June of 2018, Plaintiff had not even been billed for the medical services associated with the April 25, 2018 "Service Date."

28.     Upon information and belief, as of June of 2018, Plaintiff was current with his payments relating to many of the charges listed by Exhibit A.

29.     On or about May 20, 2018, Aurora Health Care mailed to Plaintiff a billing statement, which encompassed many of the same medical services encompassed by Exhibit A. A copy of such billing statement is attached to the complaint as Exhibit C.

5

30.   Exhibit C indicates that Plaintiff Thorson did not have any overdue payments owed to Aurora Health Care as of the date of the letter.

31.   Indeed, Exhibit C describes the alleged debts in the amount of $80.00 incurred for services on April 10, 2018 and April 16 through 178, 2018 as "new activity."

32.   Furthermore, although Exhibit C is dated after April 25, 2018, the letter does not even encompass any charges associated with a "Service Date" of April 25, 2018.

33.   Upon information and belief, Plaintiff Thorson had not been billed for the alleged debt in the amount of $885.00 incurred for services on April 25, 2018 at the time Exhibit C was mailed on or about May 20, 2018.

34.   Medical debts are not delinquent when the account is first billed; instead, the debt becomes delinquent if left unpaid for a certain amount of time, usually at least thirty days.  *See, e.g., Moscona v. Cal. Bus. Bureau, Inc.*, 2011 U.S. Dist. LEXIS 123177, at *5-6 (S.D. Calif. Oct. 24, 2011).

35.   Assuming the date of first delinquency for one or more of the alleged debts referenced in Exhibit A was sometime in June 2018, that debt would not have been eligible to appear on a credit report until 180 days after its first delinquency date in December 2018.

36.   As of the date of Exhibit A, one or more the alleged debts referenced in Exhibit A was ineligible to be reported.

37.   Assuming Exhibit A was mailed on or about October 13, 2018, one or more of the alleged debts referenced in Exhibit A would not have appeared on Plaintiff's credit report at the close of the validation period, sometime in mid-November 2018.

6

38.     The statement "If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until the 30 day validation period described below" is thus false, deceptive, and misleading.

39.     The Seventh Circuit has held that:

Debt collectors are required to tailor boilerplate language to avoid ambiguity. If they fail to do so, they run the risk of liability. *See Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) (holding that the dunning letter would violate §1692e even if it was 'a form letter'). If they fail to do so, they run the risk of liability. *See id.* ('When language in a debt collection letter can reasonably be interpreted to imply that the debt collector will take action it has no intention or ability to undertake, the debt collector that fails to clarify that ambiguity does so at its peril.') (quoting *Gonzales v. Arrow Fin Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011)).

*Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 371 (7th Cir. 2018).

40.     Plaintiff Thorson read Exhibit A.

41.     Plaintiff Thorson was misled and confused by Exhibit A.

42.     The unsophisticated consumer would be misled and confused by Exhibit A.

43.     Plaintiff Thorson had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *Facts Related to Plaintiff Johnson*

44.     On or around July 8, 2019, SCS mailed a debt collection letter to Plaintiff Johnson regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit D.

45.     Upon information and belief, the alleged debt listed in Exhibit D was incurred as the result of a transaction for personal medical in which payment was deferred by agreement.

46.     Upon information and belief, Exhibit D is a form letter, generated by a computer, and with the information specific to Plaintiff Thorson inserted by the computer.

7

47. Upon information and belief, Exhibit D is a form debt collection letter, used by SCS to attempt to collect alleged debts.

48. Upon information and belief, Exhibit D is the first written communication SCS mailed to Plaintiff Thorson regarding this alleged debt.

49. Exhibit D includes a statement which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires debt collectors provide alleged debtors along with, or within five days of, the initial communication:

**\*\*IMPORTANT CONSUMER NOTICE\*\***
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

50. Exhibit D also lists the following details about Plaintiff Thorson' alleged debt:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| LAKESHORE MEDICAL CLINIC SOUTHPOINTE | ████████6422 | 02/26/19 | $103.03 |
| | | Total Amount Due: | $ 103.03 |

51. Above the validation notice, Exhibit D additionally states:

The past due accounts below have been referred to this office for debt collection. You may pay the total amount due by cash, check, credit card, debit card or money order. If requested, this office will notify you if and when it intends to report this claim to a credit bureau, but in no event will that happen until after the 30 day validation period described below.

52. Similar to Exhibit A, Exhibit D thus falsely threatens to report Plaintiff Johnson's alleged debt to CRAs at the close of the 30-day validation period.

53. Exhibit D, however, indicates that the "Service Date" associated with Plaintiff Johnson's alleged debt was February 26, 2019.

54. Upon information and belief, if the date of service associated with the alleged debt referenced by Exhibit D was February 26, 2019, the first date of delinquency for the debt would not have been until sometime near the end of March 2019.

8

55.     If Plaintiff Johnson's alleged debt first became delinquent around the end of March 2019, that debt would not have been eligible to appear on Plaintiff Johnson's credit report until the close of September 2019, approximately two months after the date of the letter, Exhibit D.

56.     Plaintiff Johnson read Exhibit D.

57.     Plaintiff Johnson was misled and confused by Exhibits D.

58.     The unsophisticated consumer would be misled and confused by Exhibit D.

59.     Plaintiff Johnson had to spend time and money investigating Exhibit D, and the consequences of any potential responses to Exhibit D.

### *The FDCPA*

60.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of

9

the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l& Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v.*

*Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

61.    Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

62.    Misrepresentations of the character, amount, or legal status of any debt and misrepresentations as to the proper party to pay, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at

*1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

63.    15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

64.    15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

65.    15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

66.    15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

### *The WCA*

67.    The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

68.    The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v.

12

*Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

69.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

70.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983).  Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

71.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

72.     The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

73.     Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

13

74.     Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

75.     Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

76.     Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ." Wis. Admin. Code § DFI-Bkg 74.16(9) defines such "other conduct" as "including conduct which violates the Federal Fair Debt Collection Practices Act."

77.     Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

78.     Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

79.     The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

80.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81.     Exhibits A & D contain false representations about when the debts would appear on the consumer's credit report.

82.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), and 1692e(10).

## COUNT II – WCA

83.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

84.     SCS is licensed as a "Collection Agency" under Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-BKG 74.

85.     Exhibits A & D contain false representations about when the debts would appear on the consumer's credit report.

86.     Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

87.     Plaintiffs bring this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) between October 7, 2018 and October 7, 2019, inclusive, (e) in which a "date of service" listed on the letter is less than 180 days prior to the date of the letter, (f) that was not returned by the postal service.

88.     The Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each Class.

15

89.     There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA and WCA.

90.     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

91.     Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

92.     A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

93.     Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  October 7, 2019

**ADEMI & O'REILLY, LLP**

By:     /s/ Mark A. Eldridge
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)

16

Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com

17